1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2  MICHELLE LO (NYRN 4315163)
   Chief, Civil Division
3  CHRISTOPHER F, JEU (CABN 247865)
   Assistant United States Attorney
4

5        150 Almaden Blvd., Suite 900
         San Jose, California 95113
6        Telephone: (415) 535-5082
         FAX: (408) 535-5066
7        Christopher.Jeu@usdoj.gov
8

9  Attorneys for Federal Defendant
   UNITED STATES OF AMERICA
10

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14

15  MAI-TRANG THI NGUYEN,              )  Case No. 23-cv-06047-VKD
                                       )
16            Plaintiff,               )  **FEDERAL DEFENDANT'S**
                                       )  **REPLY IN SUPPORT OF**
17       v.                            )  **MOTION TO DISMISS**
                                       )  **FIRST AMENDED COMPLAINT**
18  UNITED STATES OF AMERICA           )
                                       )
19                                     )  Date:  April 9, 2024
              Defendant.               )  Time:  10:00 a.m.
20                                     )  Place:  Courtroom 2, 5th Floor
                                       )  Judge:  Hon. Virginia K. DeMarchi
21                                     )
22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION**

3

In the Opposition, Dkt. No. 23 ("Opp."), Plaintiff Mai-Trang Thi Nguyen ("Plaintiff") practically

4

admits that:

5

- Plaintiff, who is based in the United States, is not among those injured in the Israel-Hamas

6

war.  *See* Opp'n at 1.[1]  Rather, Plaintiff's claims are based on her generalized grievances

7

regarding the Israel-Hamas war.  *See id*. at 4, 7.  *See, e.g., Nguyen v. United States*, No. 22-

8

16074, 2023 WL 4486747, at *1 (9th Cir. July 12, 2023) (affirming dismissal of plaintiff's

9

claims for lack of standing, as "a 'generalized grievance against allegedly illegal government

10

conduct' is insufficient to confer standing.") (citation omitted);

11

- Plaintiff's claims concerning U.S. foreign policy raise complex policy choices and value

12

determinations.  *See, e.g*., Opp'n at 2–3 (presenting competing interests of Israel and

13

Palestinians; opposing military funding, but supporting "sending money to Israel for water,

14

food, energy & medical supplies").  Accordingly, Plaintiff's claims present non-justiciable

15

political questions that are best addressed by the legislative and executive branches.  *See*

16

*Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980-83 (2007) (analyzing claim arising from

17

United States' support of Israel, and reasoning that the "conduct of the foreign relations of

18

our government is committed by the Constitution to the executive and legislative [branches] .

19

. . and the propriety of what may be done in the exercise of this political power is not subject

20

to judicial inquiry or decision.") (citation omitted).  *See also Defense for Children*

21

*International-Palestine v. Biden*, No. 23-cv-05829-JSW, 2024 WL 390061, at *3–5 (N.D.

22

Cal. Jan. 31, 2024). (holding that the political question doctrine barred plaintiffs' claims

23

arising from the Israel-Hamas war based on separation of powers concerns); and

24

- The Leahy Law does not create a private right of action.  *See* Opp. at 19.

25

Nevertheless, Plaintiff maintains that she has stated a plausible First Amendment claim, as Israel

26

and Hamas have asserted religious interests regarding disputed territory.  *See id*. at 10–13.  In addition,

27

28

---

[1] Pagination from Plaintiff's footer.

1   Plaintiff contends that she has Article III standing, because the Israel-Hamas war has impaired her

2   "quality of life," such as by bringing back her "pain" from "dealing with physical scars as an infant."

3   *See id*. at 14–15.  But Plaintiff has not satisfied the requirements of Article III standing.  Plaintiff's

4   claims still arise from generalized grievances regarding the Israel-Hamas war.  Moreover, in similar

5   First Amendment cases challenging the United States' support of Israel, courts have held that such

6   claims are barred by the political question doctrine.  As the defects in Plaintiff's claims are incurable,

7   the Court should dismiss Plaintiff's claims without leave to amend.

8   **II.    ARGUMENT**

9          **A.    The Court Does Not Have Jurisdiction over Plaintiff's Causes of Action, Because**
           **Plaintiffs' Claims Are Based on Generalized Grievances Regarding the Israel-**
10         **Hamas War**

11         In her Opposition, Plaintiff, who is based in the United States, practically concedes that her

12  claims are based on her generalized concerns regarding the Israel-Hamas war.  *See, e.g.,* Opp'n at 1–6

13  (*e.g.*, discussing the "Israel-Hamas war" as a "war of modern colonialism" and expressing concerns

14  about humanitarian issues and potential escalation of violence into WWIII).

15         A generalized grievance does not meet the requirements for Article III standing, as it is

16  "characterized by its abstract and indefinite nature."  *Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir.

17  2022) (quoting *Sisley v. U.S. Drug Enf't Admin.,* 11 F.4th 1029, 1034 (9th Cir. 2021).  *See also Nguyen*,

18  2023 WL 4486747, at *1 ("a 'generalized grievance against allegedly illegal government conduct' is

19  insufficient to confer standing.") (quoting *Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003)).

20         The federal courts enforce the requirement against "generalized grievances" by "insisting that a

21  plaintiff satisfy the familiar three-part test for Article III standing:  that he '(1) suffered an injury in fact,

22  (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

23  redressed by a favorable judicial decision.'"  *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Spokeo,*

24  *Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).  "Foremost among these requirements is injury in fact—a

25  plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is

26  'concrete and particularized,' *i.e.*, which 'affect [s] the plaintiff in a personal and individual way.'  *Gill*,

27  585 U.S. at 65 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, and n.1 (1992)).

28

1

2    In the Opposition, Plaintiff largely concedes that her claims are based on her generalized

3  concerns about the Israel-Hamas war.  *See id*. at 4, 6, 7.  For instance, Plaintiff expresses humanitarian

4  concerns about conditions in Gaza.  *See id.* at 6.

5    Nevertheless, Plaintiff attempts to re-cast her generalized grievances regarding the Israel-Hamas

6  war as "particularized" injuries.  First, Plaintiff appears to argue that she is a "female Buddha," and that

7  she "cannot live" in a country that supports Israel's war efforts.  *See* Opp'n at 14.  Second, Plaintiff

8  posits that the Israel-Hamas war has impaired her "quality of life," for instance, due to concerns about

9  possible "jihadi's influence over our people."  *Id*. at 14.  Third, Plaintiff claims that the Israel-Hamas

10  war has caused her to have to deal with "pain as an adult dealing with physical scars as an infant of

11  war." *Id.* at 15.

12    First, Plaintiff's apparently theory that she is a "female Buddha" is "conjectural" or

13  "hypothetical."  *Lujan*, 504 U.S. at 560.  Second, Plaintiff's "quality of life" argument, *see* Opp'n at 14–

14  15, is based on a Plaintiff's generalized stress and fear of injury.  *See San Francisco Herring Ass'n v.*

15  *Pac. Gas & Elec. Co*., No. 14-cv-04393-WHO, 2020 WL 6736930, at *5 (N.D. Cal. June 15, 2020)

16  (rejecting plaintiff's "health risk  theory," as plaintiff "has not alleged a concrete and particularized

17  current injury").  Third and along the same lines, Plaintiff's argument that the Israel-Hamas war has

18  "brought back" her "pain as an adult dealing with physical scars as an infant of war" is not a "concrete

19  and particularized current injury."  *See id*.

20    Accordingly, Plaintiff's contentions regarding a purported injury-in-fact arising from the Israel-

21  Hamas war are too vague and conclusory to state a claim upon which relief may be granted.  *See Bell*

22  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

23    Nor does Plaintiff meet the other requirements of Article III standing.  Plaintiff's purported

24  injuries are not "fairly traceable" to the "challenged conduct" of the United States.  *Gill*, 585 U.S. at 65.

25  Rather, Plaintiff's purported injuries are based on concerns about the Israel-Hamas war itself, rather than

26  the United States' support of Israel.  Moreover, Plaintiff's alleged injuries are not "likely to be redressed

27  by a favorable judicial decision."  *Id*.  In the First Amended Complaint, Plaintiff seeks a "permanent

28  ceasefire," relief that would depend upon the conduct of third parties that the "courts cannot presume

1   either to control or to predict." *Lujan*, 504 U.S. at 562.  The Court should dismiss Plaintiff's claims in

2   their entirety, because they are based on generalized grievances.

3         **B.**    **Plaintiffs Practically Concedes that the Claims Present Political Questions**

4         In the Opposition, Plaintiff recognizes that her claims, which are based on whether the United

5   States should provide assistance to Israel, present complex policy questions.  *See, e.g.,* Opp'n at 2–4.

6         In another case arising from United States' support for Israel, the Ninth Circuit reasoned that the

7   "conduct of the foreign relations of our government is committed by the Constitution to the executive

8   and legislative [branches] . . . and the propriety of what may be done in the exercise of this political

9   power is not subject to judicial inquiry or decision." *Corrie*, 503 F.3d at 982 (quoting *Oetjen v. Cent.*

10  *Leather Co.*, 246 U.S. 297, 302 (1918)).  Whether the legislative or executive branches decide what is

11  appropriate for the foreign relations of the United States is a political question "involv[ing] the exercise

12  of a discretion demonstrably committed to the executive or legislature, but many such questions

13  uniquely demand single-voiced statement of the Government's views.*"  Baker v. Carr*, 369 U.S. 186,

14  211 (1962).  Courts lack subject matter jurisdiction over claims that "involve[] a nonjusticiable political

15  question." *Defense for Children International-Palestine*, 2024 WL 390061 at *4.

16        In the Opposition, Plaintiff acknowledges the complexity of the political and policy issues.  *See,*

17  *e.g.,* Opp'n at 2–4, 8–10 (*e.g.*, opposing military aid, but supporting "sending money to Israel for water,

18  food, energy & military supplies") (acknowledging both Gazans' humanitarian concerns and the gravity

19  of the October 7, 2023 attacks).

20        With respect to the *Baker* "tests," given the structure of the Leahy Law, there is a "textually

21  demonstrable" "commitment of the issue" to the Executive Branch, which can determine whether

22  assistance to Israel should be suspended based on human rights concerns.  *See Corrie*, 503 F.3d at 980

23  (first *Baker* test).  Likewise, it would be impossible for the court to undertake "independent resolution"

24  regarding the Israel-Hamas war "without expressing lack of the respect" to the executive and legislative

25  branches.  *See id.* (fourth *Baker* test).  In addition, given the complexity of the foreign policy issues

26  involving Israel and Hamas, there is an "an unusual need for unquestioning adherence to a political

27  decision already made."  *See id*. (fifth *Baker* test).  Last, as the Ninth Circuit has reasoned, courts should

28  be "mindful of the potential for causing international embarrassment were a federal court to undermine

1  foreign policy decisions in the sensitive context of the Israeli–Palestinian conflict." *Corrie*, 503 F.3d at
2  984.

3      Accordingly, Plaintiff's claims arise from "controversies" that center on "policy choices and
4  value determinations" that would need to be addressed by Congress or the Executive Branch. *Japan*
5  *Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986). Thus, the Court should dismiss
6  Plaintiff's claims.

7      ### C.    Plaintiff's First Amendment Claim is Fatally Flawed

8      In her Opposition, Plaintiff maintains that she has asserted a viable First Amendment claim
9  under the Establishment Clause. *See* Opp. at 10–13. The crux of Plaintiff's argument is that the
10  disputed "land is known as the Holy land," and that Israel and Hamas have religious motivations. *Id*. at
11  10–11.

12     Courts have rejected similar First Amendment claims arising from the United States' support of
13  Israel based on the political question doctrine. For instance, in *Dickson v. Ford*, the plaintiff brought a
14  challenge as a taxpayer to the constitutionality of the Emergency Security Assistance Act of 1973
15  ("ESAA"), which provided financial aid to the military of the State of Israel. 521 F.2d 234, 235 (5th
16  Cir. 1975). *See Corrie*, 503 F.3d at 983 (citing *Dickson* with approval). In *Dickson*, plaintiff's
17  complaint alleged that Israel "was created by and is an instrument of the larger entity known as the
18  'Jewish People,' and, hence, grants of foreign assistance by the United States to Israel are prohibited by
19  the Establishment of Religion Clause of the First Amendment to the Constitution." *Id*. at 235.
20  Commenting on the challenge to the ESAA, the Fifth Circuit reasoned that "[a]mong the areas which the
21  courts have traditionally deemed to involve political questions is the conduct of foreign relations, which
22  'is committed by the Constitution to the executive and legislative 'the political' departments of the
23  government . . . .' " *Id*. at 236 (quoting *Oetjen*, 246 U.S. at 302). Thus, the Fifth Circuit held that the
24  "determination of whether foreign aid to Israel is necessary at this particular time is a 'question uniquely
25  demand(ing) single-voiced statement of the Government's views.'" *Id.* (citation omitted).

26     Likewise, in *Mahorner v. Bush*, the District of District of Columbia, following *Dickson,* rejected
27  a similar Establishment Clause challenge to the United States' support of Israel. 224 F. Supp. 2d 48, 53
28

1  (D.D.C. 2002), *aff'd*, No. 02-5335, 2003 WL 349713 (D.C. Cir. Feb. 12, 2003).  The *Mahorner* court*,*

2  found it "abundantly clear that the plaintiff's claims concerning the Executive Branch's ability to

3  conduct both military and foreign affairs are non-justiciable political questions."  *Id.*  Accordingly, the

4  *Mahorner* court followed *Dickson* and dismissed plaintiff's claims for lack of subject matter jurisdiction.

5  *Id.* 224 F. Supp. 2d at 53–54.  Thus, the Court should dismiss Plaintiff's First Amendment claim.

6  　　　　Second, as this Court reasoned in its screening order, Plaintiff has not "explain[ed] how she has

7  any individual interest in the alleged U.S. support for Israel's occupation of 'religious land.'"  In the

8  Opposition, Plaintiff's articulated reasons, including the "Buddha" theory, do not rise above the

9  "speculative" level.  *See Twombly*, 550 U.S. at 545.  Rather, Plaintiff's First Amendment theory is

10  apparently based on third parties' "legal rights or interests."  *See Abdullah v. Paxton*, 65 F.4th 204, 210

11  (5th Cir.), *cert. denied*, 144 S. Ct. 188 (2023) (dismissing First Amendment Establishment Clause claim

12  for lack of standing based on its being based on third parties' religious interests).  Thus, the Court

13  should dismiss Plaintiff's First Amendment claim.

14  　　　　**D.**　　　　**Plaintiff Concedes that the Leahy Law Does Not Create a Private Right of Action**

15  　　　　In her Opposition, Plaintiff does not dispute that the Leahy Law does not create a private right of

16  action.  *See* Opp. at 19–20.  "Like substantive federal law itself, private rights of action to enforce

17  federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 276 (2001) (citation

18  omitted).  In *Abusharar v. Hagel*, the Central District of California found there was "no private right of

19  action under the Leahy Amendment."  77 F. Supp. 3d 1005, 1006 (C.D. Cal. 2014).  "The judicial task is

20  to interpret the statute . . . to determine whether it displays an intent to create not just a private right but

21  also a private remedy."  *Id.* (quoting *Alexander*, 532 U.S. at 286).  "The Leahy Amendment shows no

22  evidence of such an intent."  *Id.*  The *Abusharar* court reasoned that although the Leahy Law "clearly

23  means to deter human rights violations, there is no language indicating that a private enforcement right

24  exists."  *Id.*  Rather, "the statute is directed specifically to the executive branch," and it "directly

25  empowers the secretary of state to determine when a human rights violation occurs so that foreign aid

26  may be halted."  *Id*. at 1006–07.  "Thus, absent additional 'rights-creating language,' the Court cannot

27  entertain a private right of action."  *Id.* at 1007.  The Court should follow *Abusharar* and find there is no

28  private cause of action.  Therefore, Plaintiff's Leahy Law claim should be dismissed.

**E.    The Court Should Deny Leave to Amend**

The Court should not grant Plaintiff leave to amend, because amendment would be futile; and an amended complaint would be subject to dismissal.  *See Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1298 (9th Cir. 1998) (citations omitted).  In the Opposition, Plaintiff presents a "revised" First Amendment claim.  *See* Opp'n at 10.  But Plaintiff's revised claim would still be subject to dismissal, including because it is based on Plaintiff's generalized grievances.  Moreover, Plaintiff's revised claim presents political questions.  Thus, the Court should dismiss without leave to amend.

**III.    CONCLUSION**

For the reasons set forth above and in Federal Defendant's Motion to Dismiss, the Court should dismiss Plaintiff's First Amended Complaint.  Plaintiff's lawsuit challenging U.S. foreign policy regarding the Israel-Hamas war is based on generalized grievances.  In addition, Plaintiff's claims are barred by the political question doctrine.  Because the defects in Plaintiff's First Amended Complaint are not curable, the Court should dismiss without leave to amend.

DATED: March 11, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


*/s/ Christopher F. Jeu*
CHRISTOPHER F. JEU
Assistant United States Attorney
Attorneys for Federal Defendant

1

## **PROOF OF SERVICE**

2      The undersigned hereby certifies that he is an employee of the Office of the United States

3  Attorney for the Northern District of California and is a person of such age and discretion to be

4  competent to serve papers.

5      The undersigned further certifies on March 11, 2024, that he is causing a copy of the following:

6   **1.   FEDERAL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST**

7   **AMENDED COMPLAINT**

8  to be served upon the party in this action as follows:

9      ☑ EMAIL-FRCP 5(b)(2)(E) pursuant to written consent to service by electronic means by

10  placing in a secure email in accordance with this office's practice, and addressed to the party's last

11  known email address listed below:

12      Mai-Trang Thi Nguyen

13      Email: furlycustomerservice@yahoo.com

14

15      I declare under penalty of perjury under the laws of the United States of America that the

16  foregoing is true and correct.  Executed on March 11, 2024, in Santa Clara County, California.

17                    /s/ *Christopher F. Jeu*
                    CHRISTOPHER F. JEU
18

19

20

21

22

23

24

25

26

27

28